# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | |
| **SSAB ENTERPRISES LLC,** | |
| **and,** | |
| **NUCOR CORPORATION,** | **Court No. 22-00029** |
| **Defendant-Intervenors.** | |
| **DONGKUK STEEL MILL CO., LTD.,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Court No. 22-00032** |
| **Defendant,** | |
| **and,** | |
| **NUCOR CORPORATION,** | |
| **Defendant-Intervenor.** | |

## RESPONSE TO MOTION FOR JUDGMENT ON THE AGENCY RECORD

Ct. Nos. 22-00029, 22-00032

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: November 15, 2022

Ct. Nos. 22-00029, 22-00032

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................... 1

II.   RULE 56.2 STATEMENT ........................................................ 2

    A.   Administrative Decision Under Review ................................. 2

    B.   Issues Presented and Summary of Argument ....................... 3

        1.   Whether Commerce's Determination that the Provision of Free Emissions Permits Under the Korea Emissions Trading System Is Countervailable Was Supported by Substantial Evidence and in Accordance with Law .................................................................. 3

III.  STATEMENT OF FACTS ....................................................... 4

IV.  STANDARD OF REVIEW ...................................................... 9

V.   ARGUMENT .......................................................................... 12

    A.   Commerce's Finding that the GOK's Provision of KETS Permits Is a Countervailable Subsidy Was Supported by Substantial Evidence and in Accordance with Law ........................................................... 12

        1.   Commerce Properly Found that the Provision of Free Emissions Permits Under the KETS Program Provides a Financial Contribution and Benefit to Hyundai Steel ................ 14

        2.   Commerce Properly Found that the GOK's Provision of Free Emissions Permits Under the KETS Program Results in Revenue Forgone that is Otherwise Due ................................... 23

        3.   Commerce Properly Found that Free Allowances Under the KETS Program are Specific ............................................................. 26

VI.  CONCLUSION .................................................................... 34

Ct. Nos. 22-00029, 22-00032

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*BGH Edelstahl Siegen GmbH v. United States,*
No. 21-00080, slip op. 22-117
(Ct. Int'l Trade Oct. 12, 2022).......................................................*passim*

*Ceramica Regiomontana, S.A. v. United States,*
810 F.2d 1137 (Fed. Cir. 1987) .............................................. 10

*Changzhou Trina Solar Energy Co. v. United States,*
466 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ........................................27

*Consol. Fibers, Inc. v. United States,*
32 CIT 24, 535 F. Supp. 2d 1345 (2008)................................................11

*Consolo v. Fed. Mar. Comm'n,*
383 U.S. 607 (1966) .................................................................... 10

*Dongtai Peak Honey Indus. Co. v. United States,*
38 CIT 334, 971 F. Supp. 2d 1234 (2014),
*aff'd,* 777 F.3d 1343 (Fed. Cir. 2015)...............................................10, 11

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996) ...................................................9

*Geneva Steel v. United States,*
914 F. Supp. 563 (Ct. Int'l Trade 1996) .............................................22

*Industriales de Aceitunas de Mesa v. United States,*
523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021) ................................30, 31

*INS v. Elias-Zacarias,*
502 U.S. 478 (1992).......................................................................10, 14

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States,*
38 CIT 1632, 28 F. Supp. 3d 1317 (2014)...........................................11

*Kajaria Iron Castings Pvt. Ltd. v. United States,*
   156 F.3d 1163 (Fed. Cir. 1998) ........................................................ 22

*Matsushita Elec. Indus. Co. v United States,*
   750 F.2d 927 (Fed. Cir. 1984) ......................................................... 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ..................................................................... 10, 11

*PPG Indus. v. United States,*
   928 F.2d 1568 (Fed. Cir. 1991) ....................................................... 27

*Universal Camera Corp. v. NLRB,*
   340 U.S. 474 (1951) ........................................................................ 9

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................ 9

19 U.S.C. § 1677 ................................................................................. 12

19 U.S.C. § 1677(5)(D)(ii) ..................................................... 15, 16, 24

19 U.S.C. § 1677(5)(E) ............................................................... 15, 16

19 U.S.C. § 1677(5A)(D)(i) ................................................................ 26

19 U.S.C. § 1677(5A)(D)(ii) ...................................................... 27, 32

Tariff Act of 1930, section 771(6) ................................................... 22

**Regulations**

19 C.F.R. § 351.502(e) ...................................................................... 30

**Administrative Materials**

*Countervailing Duties,* 63 Fed. Reg. 65,348
   (Dep't Commerce Nov. 25, 1998) .............................................. 20, 21

Ct. Nos. 22-00029, 22-00032

*Forged Steel Fluid End Blocks From the Federal Republic of Germany,*
    85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) ................ 17, 18

*Silicon Metal from Australia*, 83 Fed. Reg. 9,834
    (Dep't Commerce Mar. 8, 2018) ............................................................ 32

*Wood Mouldings and Millwork Products from the People's Republic of China,*
    86 Fed. Reg. 67 (Dep't Commerce Jan. 4, 2021) ........................ 22, 23

## Other Authorities

Uruguay Round Agreements Act, Statement of
    Administrative Action, H.R. Doc. No. 103-316, vol. 1
    (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ...................................... 26

Ct. Nos. 22-00029, 22-00032

# **GLOSSARY**

**AAGEP**

Act on the Allocation and Trading of Greenhouse-Gas Emissions
Permits

**Commerce**

U.S. Department of Commerce

**CTL**

Cut-to-Length

**ETS**

Emissions Trading System

**GOK**

Government of Korea

**KAU**

Korean Allowance Units

**KETS**

Korea Emissions Trading System

**KRW**

Korean Won

Ct. Nos. 22-00029, 22-00032

## I.    __INTRODUCTION__

On behalf of the Defendant-Intervenor in this action, Nucor

Corporation ("Nucor" or "Defendant-Intervenor"), we hereby submit the

following response to the August 5, 2022 briefs in support of the motion

for judgment on the agency record filed by Plaintiff Hyundai Steel

Company ("Hyundai Steel" or "Plaintiff") and Dongkuk Steel Mill Co.,

Ltd. ("Dongkuk"). Pl. Hyundai Steel Co.'s Br. in Supp. of Mot. for J. on

the Agency R. (Aug. 5, 2022), ECF No. 37-2 ("Plaintiff Br."); CIT Ct. No.

22-00032, Pl's. Br. in Supp. of Mot. for J. on the Agency R. (Aug. 5,

2022), ECF No. 43.[1] For the reasons discussed in this brief, in

conjunction with those presented by Defendant United States,

Defendant-Intervenor respectfully request that this Court reject the

arguments raised by Plaintiffs and affirm the Final Results of the U.S.

Department of Commerce ("Commerce") in the 2019 administrative

review of the countervailing duty ("CVD") order on *Certain Cut-to-*

---

[1]    In their complaint, Dongkuk raised not being selected by
Commerce as a mandatory respondent in the underlying review. Since
Dongkuk did not address that issue in briefing, we understand that
issue to be waived and do not address it here.

*Length Carbon-Quality Plate from the Republic of Korea* ("*CTL Plate from Korea*").

## II.   RULE 56.2 STATEMENT

### A.   Administrative Decision Under Review

The administrative determination challenged in this appeal is Commerce's Final Results in the 2019 administrative review of the CVD order on *CTL Plate from Korea. Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea*, 87 Fed. Reg. 79 (Dep't Commerce Jan. 3, 2022) (final results of countervailing duty admin. rev.; 2019), P.R. 211, Appx1076-1077 ("Final Results") and accompanying Issues and Decision Memorandum, P.R. 210, Appx1037-1075 ("Final I&D Memo").[2]

---

[2]   Documents on the public record of the underlying administrative review are identified here as "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on April 5, 2021. Admin. R. (Apr. 5, 2022), ECF No. 25. Documents in the confidential administrative record are identified by name, followed by "C.R." and the corresponding record number.

Ct. Nos. 22-00029, 22-00032

### B.    Issues Presented and Summary of Argument

1.    Whether Commerce's Determination that the Provision of Free Emissions Permits Under the Korea Emissions Trading System Is Countervailable Was Supported by Substantial Evidence and in Accordance with Law

Yes. Commerce appropriately found that the Government of Korea's ("GOK") provision of free emissions permits under the Korea Emissions Trading System ("KETS") program is countervailable. Hyundai Steel and the GOK incorrectly argue that the KETS program does not provide a financial contribution or benefit when the program is analyzed as a whole. However, because the GOK relieves companies with high international trade intensity or production costs from having to purchase additional emissions from the government, the government has given up its entitlement to collect revenue. Contrary to Hyundai Steel's claims, this program is *de jure* specific because the implementing legislation expressly limits eligibility to companies with high international trade intensity or production costs. As such, Commerce's finding that this program confers a countervailable subsidy was supported by substantial evidence and in accordance with law.

3

## III.  **STATEMENT OF FACTS**

Commerce initiated an administrative review of the CVD order covering *CTL Plate from Korea* on April 8, 2020 and selected Plaintiff Hyundai Steel as the sole mandatory respondent on May 6, 2020. *Certain Cut-to-Length Carbon-Quality Steel Plate From the Republic of Korea*, 86 Fed. Reg. 34,718 (Dep't Commerce June 30, 2021) (prelim. results of countervailing duty admin. rev.; 2019), P.R. 160, Appx1034-1036 ("Preliminary Results") and accompanying Preliminary Decision Memorandum, P.R. 157 at 2, Appx1001 ("Prelim Decision Memo").

The Government of the Republic of Korea ("GOK") and Hyundai Steel submitted their initial questionnaire responses on June 30, 2020 and May 28, 2020, respectively. Prelim Decision Memo at 2, Appx1001. On August 17, 2020, Defendant-Intervenor Nucor filed new subsidy allegations including the allegation that the GOK's provision of free emissions permits under the KETS program is countervailable. *See* Letter from Wiley Rein, LLC to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: New Subsidy Allegations* (Aug. 17, 2020), P.R. 109-110, C.R. 116-117, Appx9230-9238. On September 3, 2020, Hyundai Steel and the

4

Government of Korea each submitted rebuttal comments. Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Response to New Subsidy Allegations* (Sept. 3, 2020), P.R. 117, C.R. 119, Appx9737; Letter from Yoon & Yang LLC to Sec'y Commerce, re: *Countervailing Duty Administrative Review on Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Response to Petitioner's New Subsidy Allegations* (Sept. 3, 2020), P.R. 116, C.R. 118, Appx9719, Appx9724-9725.

On March 22, 2021 Commerce issued a letter requesting additional information from Nucor concerning the newly alleged subsidies, which Nucor responded to on March 24, 2021. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Cut-to-Length Caron-Quality Steel Plate from the Republic of Korea: New Subsidy Allegation Supplemental Questionnaire Response* (Mar. 24, 2021), P.R. 125, Appx14820. On April 26, 2021 Commerce issued a New Subsidy Questionnaire to which Hyundai Steel and the GOK each responded on May 17, 2021. Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea,*

*Case No. C-580-837: Hyundai Steel's Carbon Emissions New Subsidy Allegation Questionnaire Response* (May 17, 2021), P.R. 147, C.R. 134-135, Appx11902, Appx11908; Letter from Yoon & Yang LLC to Sec'y Commerce, re: *Administrative Review on Certain Cut-to-Length Carbon-Quality Steel Plate from Korea: Response to the New Subsidy Allegation Questionnaire* (May 17, 2021), P.R. 144-146, C.R. 131-133, Appx10110, Appx10116 ("GOK NSA QR"). On June 1, 2021, Nucor submitted comments and rebuttal factual information concerning Hyundai Steel and the GOK's New Subsidy Allegation Questionnaire Responses. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Comments on the GOK's and Hyundai Steel's New Subsidy Allegation Questionnaire Responses* (June 1, 2021), P.R. 151-154, C.R. 137-140, Appx12086. On June 7, 2021, Hyundai Steel responded to Nucor's comments regarding their new subsidy allegation questionnaire responses. Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's Response to*

*Nucor's Comments on NSA QR* (June 7, 2021), P.R. 155, C.R. 141,

Appx12494.

The GOK and Hyundai Steel submitted additional supplemental

questionnaire responses further describing the respondent's use of the

KETS program. *See* Letter from Yoon & Yang LLC to Sec'y Commerce,

re: *Administrative Review on Certain Cut-to-Length Carbon-Quality*

*Steel Plate from Korea: Response to the New Subsidy Allegation*

*Supplemental Questionnaire* (July 29, 2021), P.R. 170-175, C.R. 148-

152, Appx12513, Appx12536; Letter from Morris, Manning & Martin,

LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel*

*Plate from the Republic of Korea, Case No. C-580-837: Hyundai Steel's*

*New Subsidy Allegation Supplemental Questionnaire Response* (July 29,

2021), P.R. 176, C.R. 155-158, Appx13704, Appx13711.

On October 19, 2021, Commerce published its Post-Preliminary

Analysis Memorandum. Letter from James Maeder, Deputy Assistant

Sec'y for Antidumping and Countervailing Duty Operations, to Ryan

Majerus, Deputy Assistant Sec'y for Pol'y and Negs., re: *Countervailing*

*Duty Administrative Review of Certain Cut-To-Length Carbon-Quality*

*Steel Plate from the Republic of Korea; 2019: Post-Preliminary Analysis*

*Memorandum* (Oct. 19, 2021), P.R. 192, C.R. 161 at 5, Appx14332

("Post-Prelim Memo"). Commerce noted that the KETS program is

administered by the GOK's Ministry of Environment and requires large

polluters to surrender emissions permits, Korean Allowance Units

("KAUs"), to offset annual emissions of various greenhouse gases. *Id.*

at 3, Appx14330. If an entity does not surrender the requisite amount of

KAUs, the entity will be subject to a penalty for any shortfall. *Id.* The

GOK determines the amount of KAUs to be surrendered based on an

entity's historical emissions. *Id.* at 3-4, Appx14330-14331. The GOK

then freely allocates 97 percent of the KAUs to all participants in the

KETS program. *Id.* at 3, Appx14330. However, certain sectors that have

high international trade intensity and/or high production costs qualify

for additional support beyond what other companies participating in the

program receive to satisfy their requirements. *Id.* at 4, Appx14331. In

particular, Article 12(4) of the AAGEP and Article 14 of the AAGEP

Enforcement Decree explain that those types of businesses (*i.e.*, sectors)

that meet certain criteria (*i.e.*, high international trade intensity and/or

having high production costs), qualify to receive the entire 100 percent

allocation from the GOK each year. *Id.* at 4-5, Appx14331-14332.

Hyundai Steel reported that it is a member of the sub-sector classified as "Manufacturing of Basic Steel," which qualified for the full 100 percent allocation of free permits under the KETS program. *Id.* at 5-6, Appx14332-14333. Ultimately Commerce preliminarily determined that "in providing additional, free emission allocations to certain sectors, including Hyundai Steel, the GOK is providing a financial contribution in the form of revenue forgone."

Commerce published its Final Results on December 23, 2021, continuing to find the provision of free permits under the KETS program to be a countervailable subsidy. Final Results, Appx1076.

## IV.   STANDARD OF REVIEW

This Court reviews Commerce's decisions in CVD proceedings to determine whether those decisions are "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i). *See also Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (citation and quotation marks omitted). It is "something less

than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). *See also Dongtai Peak Honey Indus. Co. v. United States*, 38 CIT 334, 336, 971 F. Supp. 2d 1234, 1239 (2014), *aff'd*, 777 F.3d 1343, 1349 (Fed. Cir. 2015).

A plaintiff cannot ask the court to re-weigh the evidence on the record and decide the case for Commerce. *See Matsushita Elec. Indus. Co. v United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Factual findings by Commerce are afforded considerable deference. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (stating that in fact-intensive situations, agency conclusions should be reversed only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion). In addition, the court "uphold{s} a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987). As such, Commerce need only

"articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs.*, 463 U.S. at 43 (citation omitted).

Moreover, in determining whether Commerce's decisions in CVD proceedings are "unsupported by substantial evidence on the record, or otherwise not in accordance with law," this Court reviews the agency's conduct under the abuse of discretion standard. *See Dongtai Peak*, 38 CIT at 336, 971 F.Supp.2d at 1239; *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 38 CIT 1632, 1634-35, 28 F. Supp. 3d 1317, 1323 (2014). Accordingly, the Court has recognized that it "(1) must consider whether {Commerce's} decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and (2) analyze whether a rational connection exists between {Commerce's} fact findings and its ultimate action." *Consol. Fibers, Inc. v. United States*, 32 CIT 24, 35-36, 535 F. Supp. 2d 1345, 1352-54 (2008).

## V.   ARGUMENT

### A.   Commerce's Finding that the GOK's Provision of KETS Permits Is a Countervailable Subsidy Was Supported by Substantial Evidence and in Accordance with Law

Pursuant to 19 U.S.C. § 1677, Commerce determines that a subsidy exists and is countervailable when there is a financial contribution, a benefit is conferred, and the subsidy is specific. *See* 19 U.S.C. § 1677. As discussed in more detail below, Commerce properly found that the statutory thresholds for all three elements were met when determining that the provision of KETS permits is a countervailable subsidy program. Furthermore, Commerce's final determination in the underlying review contributes to the clarity and cohesiveness of the law by clearly analyzing and applying all relevant statutory factors.

In their opening brief, Hyundai Steel contends that Commerce should not find the GOK's provision of free KETS permits to be countervailable. In particular, they argue that the KETS program does not provide a benefit to its participants, such as Hyundai Steel, but instead imposes a "burdensome" system of compliance. Plaintiff Br. at 34. They also argue that there is no financial contribution or benefit because no revenue otherwise due to the GOK was forgone under the

program. *Id.* at 29. Finally, Hyundai Steel argues that the subsidy is not specific because other companies may qualify for the free permits in the future based on the eligibility criteria. Plaintiff Br. at 50.

In the Final Results, Commerce thoroughly considered and addressed Plaintiff's arguments, and its finding that this program confers a countervailable benefit was appropriate and necessary to calculate an accurate subsidy rate for Hyundai Steel. *See* Final I&D Memo at 11-17, Appx1047-1053. Specifically, contrary to the GOK and Hyundai Steel's argument that the additional three percent KAUs provided by the GOK have no value and therefore cannot provide a benefit, Commerce found that not only do the KAUs have monetary value, but their value is "a key part of making the KETS program function as designed." *See id.* at 15, Appx1051. Commerce also clearly demonstrated that the fact that certain industries are granted an additional three percent KAUs while others are not "means that they are, on a proportional basis, given a benefit under {KETS} not available to those industries receiving the standard 97 percent allocation." *Id.* at 13, Appx1049. Finally, Commerce explained that the subsidy is *de jure* specific because the eligibility "criteria result in an express

13

Ct. Nos. 22-00029, 22-00032

statutory limitation on which industries qualify for the additional allocation by setting thresholds that industries must meet in order to qualify." *Id*. at 16, Appx1052.

Especially in light of the considerable deference afforded to the agency to conduct fact-intensive investigations and make program- and period-specific factual determinations, *see, e.g.*, *Elias-Zacarias*, 502 U.S. at 483-84, Commerce's findings were reasonable and supported by the record. Further, Commerce made these determinations against the backdrop of established agency precedent in which Commerce has found a similar allocation disparity to be countervailable. *See infra* Section V.A.1. Accordingly, despite Plaintiff's claims to the contrary, Commerce's countervailability determination was in accordance with law, based on substantial evidence, and not an abuse of the agency's discretion.

1.  <u>Commerce Properly Found that the Provision of Free Emissions Permits Under the KETS Program Provides a Financial Contribution and Benefit to Hyundai Steel</u>

Commerce correctly found that the provision of free emissions permits under the KETS program provides a financial contribution and a benefit to Hyundai Steel. *See* Final I&D Memo at 11-17, Appx1047-

14

1053. In relevant part, the statute defines a financial contribution as "foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income." 19 U.S.C. § 1677(5)(D)(ii). The statute also explains, in relevant part, that a benefit is treated as conferred "in the case where goods or services are provided, if such goods or services are provided for less than adequate remuneration . . . ." *Id.* § 1677(5)(E).

Hyundai Steel and other international trade intensive companies received 100 percent of its allocated permits for free, whereas other Korean companies were only provided with the standard allocation (*i.e.*, 97 percent of their permits). Hyundai Steel argues that the KETS program imposes a burden on the company for which it had to make significant investments in a cogeneration project and purchase additional KAUs because its actual emissions exceed the cap placed on it by the KETS system. Plaintiff Br. at 37. The Court should reject their arguments.

As Commerce explained, the GOK imposed an environmental program on its largest polluters but then immediately relieved certain

trade intensive or high production costs companies from fully complying

with the program. In particular, Commerce explained:

> {W}hether the overarching {KETS} program imposed a
> burden on companies or whether the additional allocation
> was intended to address the large burden this placed on
> certain companies has no bearing on an analysis of whether
> the additional three percent allocation resulted in a financial
> contribution on the part of the GOK. Further, in the context
> of the {KETS} program, the GOK has established a system
> under which certain enterprises are placed in an
> advantageous position in relation to others by virtue of
> receiving an additional three percent KAU allocation.
> Neither Hyundai Steel nor the GOK refutes this basic fact
> concerning the operation of the KETS.

Final I&D Memo at 14, Appx1050. Contrary to their claims, the GOK

has specifically designated certain companies, such as Hyundai Steel, to

receive relief from incurring the full costs of the environmental program

incurred by other non-trade exposed companies. Thus, the GOK is

"foregoing or not collecting revenue that is otherwise due." 19 U.S.C.

§ 1677(5)(D)(ii). And by awarding the credits with value to Hyundai

Steel for free, the GOK is conferring a benefit by providing goods and

services for less than adequate remuneration. *Id.* § 1677(5)(E).

   This is not the first time that Commerce has analyzed the

countervailable benefits provided under an emissions trading system.

The KETS operates in almost an identical manner as the EU Emissions

Trading System ("ETS") program that Commerce analyzed and countervailed in *Forged Steel Fluid End Blocks From the Federal Republic of Germany* ("*FEBs from Germany*"). Notably, this Court recently upheld Commerce's analysis in that investigation. *See BGH Edelstahl Siegen GmbH v. United States*, No. 21-00080, slip op. 22-117 (Ct. Int'l Trade Oct. 12, 2022) ("*BGH* slip op. 22-117"). In that investigation, Commerce countervailed additional emissions allowances that the EU granted above standard allowances to prevent carbon leakage from companies with higher pollution levels. Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks From the Federal Republic of Germany,* 85 Fed. Reg. 31,454 (Dep't Commerce May 26, 2020) (prelim. affirm. countervailing duty deter., and alignment of final. deter. with final antidumping duty deter.) at 26. Specifically, Commerce explained:

> Further, we find it significant that the ETS program, which the EU characterizes as an environmental protection program, provides additional free allowances to pollute to essentially the worst polluters, while installations that are not on the carbon leakage list are not entitled to these additional allowances. By allowing these listed installations to not have to purchase additional emissions from the government, the government has given up its entitlement to collect revenue. Thus, we find that these additional allowances provided to companies on the carbon leakage list

17

> constitute a financial contribution. Further, as a result, when calculating the benefit for this program, Commerce only included the additional allowances that each company received as a result of being on the carbon leakage list.

*Id.*

On appeal, the Court analyzed and rejected similar arguments that the respondents make here regarding the emissions trading system not conferring a benefit and instead imposing a "significant financial burden on those subject to it." Plaintiff Br. at 39. For example, the Court explained in *BGH Edelstahl Siegen GmbH v. United States*:

> Commerce found that BGH was relieved of the obligation to pay for the additional emissions allowances it was given because it was on the carbon leakage list. Instead, the GOG provided them to BGH at no cost. BGH argues it is incurring additional costs because it is required to purchase emission allowances at all, which is an obligation significantly increasing its energy costs. However, Commerce determines benefit by the reduction or elimination of the obligation, without regard to the source of that obligation. *See, e.g.*, *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,361 (Dep't Commerce Nov. 25, 1998) {("*Countervailing Duties: Final Rule*")} (explaining for example that a subsidy given to offset the cost of new environmental requirements is nonetheless a countervailable subsidy assuming it is also specific). Due to receiving the additional free allowances, BGH received something for free—allowances BGH otherwise would have been required to pay to acquire at auction or on the private market.

*BGH* slip op. 22-117 at 37-38 (internal citations omitted).

18

Additionally, this Court rejected an argument similar to the respondents' argument here that no revenue was foregone because the company did not necessarily need to purchase additional permits from the government. Plaintiff Br. at 33. In *BGH Edelstahl Siegen GmbH v. United States*, the Court explained that the issue is whether the government "forgoes revenue when it gives additional free allowances to companies . . . reducing the number of allowances {the companies} must purchase at the state-run auction or the secondary market." *BGH* slip op. 22-117 at 37.

Commerce's final determination to countervail the three percent allowances that the GOK granted to companies above the standard 97 percent allowance level is therefore consistent with *FEBs from Germany* as upheld by this Court.

Commerce's final determination is also consistent with its regulations. In fact, in its implementing regulations, the agency considered and addressed the countervailability of a foreign government's establishment of an environmental system such as the KETS. In particular, Commerce explained that if a foreign government:

> {P}ut{} in place new environmental restrictions that require a firm to purchase new equipment to adapt its facilities.

> Assume also that the government provides the firm with
> subsidies to purchase that new equipment, but the subsidies
> do not fully offset the total increase in the firm's costs-that
> is, the net effect of the new environmental requirements and
> the subsidies leaves the firm with costs that are higher than
> they previously were.
>
> In this situation, section 771(5B)(D) of the {Tariff Act of
> 1930, as amended ("the Act")}, which deals with one form of
> non-countervailable subsidy, makes clear that a subsidy
> exists. Section 771(5B)(D) of the Act treats the imposition of
> new environmental requirements and the subsidization of
> compliance with those requirements as two separate actions.
> A subsidy that reduces a firm's cost of compliance remains a
> subsidy (subject, of course, to the statute's remaining tests
> for countervailability), even though the overall effect of the
> two government actions, taken together, may leave the firm
> with higher costs.

*Countervailing Duties: Final Rule*, 63 Fed. Reg. at 65,361. The agency
also explained:

> {I}f there is a financial contribution and a firm pays less for
> an input than it otherwise would pay in the absence of that
> financial contribution (or {is relieved of penalty/payment
> obligations it would otherwise have to pay for non-
> compliance}), that is the end of the inquiry insofar as the
> benefit element is concerned. {Commerce} need not consider
> how a firm's behavior is altered when it receives a financial
> contribution that lowers its input costs or increases its
> revenues.

*Id.* The KETS system operates in the same manner as the

countervailable environmental program that the agency described in

the preamble to its regulations. That Hyundai Steel may have incurred

additional costs to avoid penalties for non-compliance due to its excessive greenhouse gas emissions does not change the fact that the respondent received three percent more free allowances than the standard allocation for Korean companies. And these free allowances reduce the cost of compliance, which Commerce's regulations confirm constitutes a subsidy. *Id.*

Hyundai Steel argues that Commerce must consider the free allowances under the KETS program in its entirety to determine whether a benefit was provided given that companies may have to purchase additional emissions permits or make investments to reduce their emissions. Plaintiff Br. at 38. But these arguments are inconsistent with the statute, Congressional intent, and Commerce's practice of not allowing "negative benefits" for subsidy programs, which has been affirmed by the courts.

The Act, as amended, defines the "net countervailable subsidy" as the gross amount of the subsidy less three statutorily prescribed offsets: (1) the deduction of application fees, deposits or similar payments necessary to qualify for or receive a subsidy; (2) accounting for losses due to deferred receipt of the subsidy; and (3) the subtraction of export

taxes, duties or other charges intended to offset the countervailable

subsidy. *See* section 771(6) of the Act. Both Congress and the courts

have confirmed that these are the only offsets Commerce is permitted to

make under the statute. *See* Issues and Decisions Memorandum

accompanying *Wood Mouldings and Millwork Products from the

People's Republic of China*, 86 Fed. Reg. 67 (Dep't Commerce Jan. 4,

2021) (final affirm. countervailing duty deter.) at cmt. 8. (citing S. Rep.

No. 96-249, at 86 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 472 ("{t}he

list is narrowly drawn and is all inclusive.")) ("*Wood Mouldings from

China* Final Decision Memo"); *see also Kajaria Iron Castings Pvt. Ltd. v.

United States*, 156 F.3d 1163, 1174 (Fed. Cir. 1998) ("we agree that

19 U.S.C. § 1677(6) provides the exclusive list of permissible

offsets . . . ."); *Geneva Steel v. United States*, 914 F. Supp. 563, 609 (Ct.

Int'l Trade 1996) (explaining that section 771(6) of the Act contains "an

exclusive list of offsets that may be deducted from the amount of a gross

subsidy."). Further, Commerce recently explained in *Wood Mouldings

and Millwork Products from the People's Republic of China*:

> We agree with the petitioner that, in a subsidy analysis, a
> benefit is either conferred or not conferred, and a positive
> benefit from certain transactions cannot be masked or

> otherwise offset by "negative benefits" from other transactions. There is no offsetting credit for transactions that did not provide a subsidy benefit. Such an adjustment is not contemplated under the statute and is inconsistent with Commerce's practice. . . . Therefore, we have made no modifications to the benefit calculations for the final determination regarding alleged "negative" benefits.

*Wood Mouldings from China* Final Decision Memo at cmt. 8.

Any perceived negative benefits, offsets, or "burdens" from the KETS program are not included in the exhaustive list of offsets included in the statute. The gratuitous emissions permits provide a benefit, and the statute does not allow for an offset to those benefits on the basis that some companies have higher compliance costs. Thus, Commerce's determination that the provision of free emissions permits under the KETS program provides countervailable benefits was in accordance with law and supported by substantial evidence.

2. <u>Commerce Properly Found that the GOK's Provision of Free Emissions Permits Under the KETS Program Results in Revenue Forgone that is Otherwise Due</u>

Commerce properly found that the provision of free emissions permits constitutes revenue forgone that is otherwise due to the GOK. As noted, the statute defines a financial contribution in relevant part as "foregoing or not collecting revenue that is otherwise due, such as

granting tax credits or deductions from taxable income." 19 U.S.C.

§ 1677(5)(D)(ii). Hyundai Steel incorrectly argues that there is no

financial contribution because the GOK did not forego revenue that is

otherwise due. Plaintiff Br. at 14-34. According to Hyundai Steel, the

three percent of permits that it receives for free in excess of the

standard 97 percent allocation may not have been purchased from the

GOK, and thus no revenue would otherwise be due to the GOK. *Id.*

at 30. Hyundai Steel misses the point.

As Commerce explained in the Post-Preliminary Results, "{b}ecause

the baseline companies receiving 97 percent of the calculated allotment

are able to purchase from the GOK-run auction, and, therefore, the

GOK *is able to collect revenue* on any additional credits that these

entities may need to purchase, we find that the GOK is providing

something of value on which it could otherwise potentially collect

revenue." Post-Prelim Memo at 5, Appx14332. That is, had the GOK

provided only 97 percent of Hyundai Steel's permits for free, the

respondent would have been eligible to participate in the government

auction to recoup the remaining three percent of KAUs necessary to

satisfy its obligations under the KETS program. The GOK is entitled to

the revenue related to three percent of the free allocations, which can be paid in KAUs or the reduction of carbon emissions. That the GOK may allow the revenue it is entitled to be paid by the reduction of carbon emissions does not change the fact that it is owed revenue.

Furthermore, at the end of the year, Hyundai Steel must surrender a sufficient amount of KAUs equivalent to the amount of emissions that it emitted or face a penalty. Final I&D Memo at 14-15, Appx1050-1051. Regardless of whether they are purchased directly from the GOK through an auction or through an exchange, if Hyundai Steel does not surrender a sufficient amount of KAUs to cover its obligation to the GOK through the KETS program, the GOK is entitled to additional revenue through an "administrative penalty in a monetary form of less than three times of the average market price of the carbon dioxide emission permits up to KRW 100,000 per 1 ton of carbon dioxide." GOK NSA QR at 29, Appx10144. Hyundai Steel's argument fails to consider that the ultimate revenue obligations under the KETS program are due to the GOK in the form of KAUs or the reduction of carbon dioxide emissions, which in and of itself is directly tied to the value of KAUs that companies must surrender to the GOK.

25

Ct. Nos. 22-00029, 22-00032

3. <u>Commerce Properly Found that Free Allowances Under the KETS Program are Specific</u>

The record clearly demonstrates that the provision of free allowances under the KETS program is specific. For a subsidy to be countervailable, the statute requires the subsidy to be either *de jure* or *de facto* specific. A subsidy is *de jure* specific "{w}here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry . . . ." 19 U.S.C. § 1677(5A)(D)(i). The Statement of Administrative Action accompanying the Uruguay Round Agreements Act clarifies that "{t}he *de jure* prong of the specificity test recognizes that where a foreign government expressly limits access to a subsidy to a sufficiently small number of enterprises, industries or groups thereof, further inquiry into the actual use of the subsidy is unnecessary." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 930 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242 ("SAA"). The statute further explains that that subsidy is not *de jure* specific in certain enumerated instances "{w}here the authority providing the subsidy, or the legislation pursuant to which the authority operates, establishes

26

objective criteria or conditions governing . . . eligibility . . . ." 19 U.S.C.

§ 1677(5A)(D)(ii). "'Objective criteria or conditions' means criteria or

conditions that are neutral and that do not favor one enterprise or

industry over another." *Id.* If Commerce determines that a subsidy is *de*

*jure* specific, the agency need not analyze *de facto* specificity. *See PPG*

*Indus. v. United States*, 928 F.2d 1568, 1576 (Fed. Cir. 1991); *see also*

*Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d

1287, 1302 (Ct. Int'l Trade 2020).

Despite the clear evidence of *de jure* specificity, Hyundai Steel claims

that its receipt of free allowances under the KETS program is not

specific because "{a}s more entities become subject to the KETS over

time, more subsectors will either qualify or not qualify based on the

criteria in the AAGEP." Plaintiff Br. at 50. On its face, this argument

must fail. The AAGEP Enforcement Decree establishes the criteria for

eligibility, which exempts trade intensive and/or high production cost

sectors and allows them to receive three percent more allowances than

other participants in the program. In its Final Determination,

Commerce correctly explained that:

> {T}he criteria included in the AAGEP and implementing
> rules establish that some industries may benefit from the

> additional assistance in the form of the allocation of
> additional KAUs, while others do not. More specifically,
> article 14 of the enforcement decree for the AAGEP states
> that the "types of business eligible for gratuitous allocation
> of all emissions permits . . . shall be any of the following
> types of businesses . . ." (1) a business with an international
> trade intensity of at least 30 percent, (2) a type of business
> with production costs of at least 30 percent or (3) a type of
> business with an international trade intensity of at least 10
> percent and production costs of at least 5 percent. As such,
> the AAGEP and implementing rules not only establish
> explicit limitations but also are not objective criteria or
> conditions, as defined by section 771(5A)(D)(ii) of the Act.
> Accordingly, consistent with Commerce's decision in other
> similar cases, we continue to find that the additional three
> percent KAU allocation is de jure specific.

Final I&D Memo at 16, Appx1052 (internal citations omitted).

Commerce's *de jure* specificity determination does not somehow change

solely because some other unspecified companies may become eligible

under the same criteria in the law in the future. The Korean law clearly

identifies the sectors and provides a calculation for those businesses

that will qualify for the 100 percent allocation of free permits.

Furthermore, Commerce's *de jure* specificity determination is

consistent with its practice in prior investigations. Specifically, in *FEBs*

*from Germany*, the agency explained:

> However, while it may be true that the program rewards the
> biggest polluters by providing them with additional
> allowances that are not available to other installations and

> that the biggest polluters may come from different industries, these arguments pertain to a *de facto* specificity analysis as to whether the actual recipients of the subsidy, when considered either on enterprise or industry basis, are limited in number under section 771(5A)(D)(iii)(I) of the Act. However, we find this program is *de jure* specific under section 771(5A)(D)(i) of the Act because eligibility for this subsidy is limited by law to companies on the carbon leakage list.

*FEBs from Germany* IDM at cmt. 10. This Court recently confirmed

Commerce's specificity analysis in *BGH Edelstahl Siegen GmbH v.*

*United States*. *BGH* slip op. 22-117 at 38. Specifically, the Court found:

> Commerce reasonably determined the ETS additional free allowances program is *de jure* specific because it is expressly limited to a group of companies. Commerce found eligibility for this subsidy to be limited by law to the companies on the carbon leakage list. BGH characterizes Commerce's *de jure* specificity determination as an unlawful rule of universal availability. *However, the standard employed by Commerce is found in the statute. See* 19 U.S.C. § 1677(5A)(D)(i) ("{T}he subsidy is specific as a matter of law . . . {w}here the authority {or legislation} providing the subsidy . . . expressly limits access to the subsidy to an enterprise or industry . . ." or to a group of enterprises or industries).

*Id.* (internal cites omitted). Similar to *FEBs from Germany* where

certain energy intensive and trade exposed industries were identified in

the implementing legislation, the record confirms that the GOK's

provision of free emissions permits under the KETS program is also *de jure* specific.

While Hyundai Steel relies on this Court's recent analysis of *de jure* specificity in *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, the Plaintiff reads the case too broadly. First, this case involves olives, which is an agricultural product, and 19 C.F.R. § 351.502(e) states that an agricultural subsidy will not be considered specific under section 771(5A)(D) of the Act because the subsidy is limited to the agricultural sector. *See Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021). There is no similar regulatory exception to Commerce's specificity analysis for sectors with high international trade intensity or production costs, which is the basis of the agency's *de jure* specificity determination. *See* 19 C.F.R. § 351.502(e). Because the Court's decision was made in the context of an agricultural subsidy, it is inapplicable here.

Moreover, while the Court held "subsidies are only *de jure* specific where the authority providing the current subsidy, or its operating legislation, directly and explicitly prescribes limitations on the

Ct. Nos. 22-00029, 22-00032

distribution of subsidies to an enterprise or industry," the AAGEP does just that. *See Asociación de Exportadores*, 523 F. Supp. 3d at 1404. Article 14 of the AAGEP is expressly titled "Criteria for Types of Business Eligible for Gratuitous Allocation." GOK NSA QR at Exhibit CEP-1, Art. 14, Appx11638. It then "expressly limits" the subsidy by identifying three "{t}ypes of business eligible for gratuitous allocation of all emission permits" to include: "{a} type of business, the international trade intensity of which . . . is at least 30/100; {a} type of business, the production costs incurrence rate of which . . . is at least 30/100; {a} type of business, the international trade intensity and production costs incurrence rate of which are at least 10/100 and at least 5/100, respectively." *Id.* In other words, businesses with low international trade intensity or low production costs, which are identified in the implementing legislation, are expressly ineligible for the "gratuitous allocation of all emission permits." *See id.* Contrary to Hyundai Steel's claims, this subsidy is limited to large polluters with significant international trade exposure and/or production costs as defined by the AAGEP. This is wholly consistent with Commerce's *de jure* specificity determinations in other cases, such as *Silicon Metal*

31

*from Australia*, where the agency found "because the criteria favor enterprises or industries that conduct 'emission-intensive' activities and are 'trade-exposed' over industries or enterprises that do not conduct such activities and are not trade exposed which thus constitutes an explicit limitation on the access to the subsidy." *See* Issues and Decision Memorandum accompanying *Silicon Metal from Australia*, 83 Fed. Reg. 9,834 (Dep't Commerce Mar. 8, 2018) (final affirm. countervailing duty deter.) at cmt. 3.

Finally, Hyundai Steel claims that the KETS program is not *de jure* specific because it falls within the safe harbor provision under 19 U.S.C. § 1677(5A)(D)(ii) as "objective criteria and conditions." Plaintiff Br. at 54. This argument lacks merit. According to the statute, the terms "objective criteria or conditions means criteria or conditions that are neutral and that do not favor one enterprise or industry over another." 19 U.S.C. § 1677(5A)(D)(ii). As this Court explained in *BGH Edelstahl Siegen GmbH v. United States*:

> The statute requires objective criteria to be neutral—the criteria must not favor certain industries over others. 19 U.S.C. § 1677(5A)(D)(ii); *see* SAA at 4243. It is reasonably discernible that Commerce determined the restrictions of the carbon leakage list to favor certain enterprises or industries or groups of certain industries or enterprises.

*BGH* slip op. 22-117 at 39. Similarly, in this case, Commerce determined that the restrictions of article 14 of the enforcement decree for the AAGEP are not objective criteria because they:

> {R}esult in an express statutory limitation on which industries qualify for the additional allocation by setting thresholds that industries must meet in order to qualify. While the rules do not name specific industries, the criteria included in the AAGEP and implementing rules establish that some industries may benefit from the additional assistance in the form of the allocation of additional KAUs, while others do not. More specifically, article 14 of the enforcement decree for the AAGEP states that the "types of business eligible for gratuitous allocation of all emissions permits . . . shall be any of the following types of businesses . . ." (1) a business with an international trade intensity of at least 30 percent, (2) a type of business with production costs of at least 30 percent or (3) a type of business with an international trade intensity of at least 10 percent and production costs of at least 5 percent.

Final I&D Memo at 16. Thus, because Commerce reasonably found that the subsidy program favors some industries over others, the safe harbor provisions of 19 U.S.C. § 1677(5A)(D)(ii) do not apply.

## VI.   **CONCLUSION**

For the reasons detailed above, Defendant-Intervenor respectfully request that the Court reject the arguments raised by Plaintiff and affirm Commerce's Final Results in the 2019 administrative review of the CVD order on *CTL Plate from Korea.*

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Derick G. Holt, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: November 15, 2022

34

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Response to Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 6,707 words.

_/s/ Alan H. Price_
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

November 15, 2022
(Date)